UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. _____

| | | |
|---|---|---|
| DIANA BURROUGHS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | <u>CLASS ACTION</u> |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| JERICO PICTURES, INC. d/b/a NATIONAL PUBLIC DATA, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | JURY TRIAL DEMANDED |

CLASS ACTION COMPLAINT

Plaintiff Diana Burroughs ("Plaintiff"), individually and on behalf of others similarly situated (the "Class" or "Class members"), hereby brings this class action complaint against Defendant Jerico Pictures, Inc. d/b/a National Public Data ("Defendant"). Plaintiff alleges as follows upon personal knowledge as to her own acts and experiences, and upon the investigation of her attorneys as to all other matters.

## INTRODUCTION

1.      This is a data breach class action on behalf of individuals whose highly sensitive personally identifying information ("PII") was stolen by cybercriminals as part of a major cyber-attack on Defendant's systems. It was reported that, on or about April 8, 2024, there was unauthorized access to Plaintiff's and billions of other individuals' PII and that the information was put up for sale on the dark web (the "Data Breach").[1] Information compromised in the breach included full names, dates of birth, addresses, Social Security number ("SSN"), family history, and other sensitive and private data.[2]

2.      Defendant is a public records data provider specializing in background checks and fraud prevention.[3]

3.      As a data broker, Defendant collects and maintains in a massive database millions of individuals' PII which, upon information and belief, Defendant then sells to other companies for profit.

---

[1]     @vxunderground, X (June 1, 2024, 7:30 PM) https://x.com/vxunderground/status/1797047998481854512?lang=en.

[2]     *Id.*

[3]     National Public Data, https://nationalpublicdata.com/ (last visited Aug. 19, 2024).

4.      By taking possession and control of sensitive information such as PII, Defendant assumed a duty to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect individuals' PII from unauthorized disclosure.

5.      Defendant also has a duty to adequately safeguard individuals' sensitive and private information under industry standards and duties imposed by statutes, including Section 5 of the Federal Trade Commission Act of 1914 ("FTC Act"), and other relevant laws and regulations.

6.      Defendant breached its duties by, among other things, failing to implement and maintain reasonable security procedures and practices to protect individuals' PII from unauthorized access and disclosure.

7.      On June 1, 2024, it was reported by vx-underground ("VXUG") that Defendant's database of 2.9 **billion** records containing individuals' personal information, including their SSNs, was posted on the dark web for sale for $3.5 million by the cybercriminal group known as USDoD, who had improperly accessed the data on Defendant's network back in April 2024.[4]

8.      The report noted that VXUG was provided access to the database and it was able to confirm the validity of the data.[5]

9.      Defendant has not provided any notice to affected individuals, including Plaintiff, who only learned that her SSN and other PII was posted on the dark web as a result of the Data Breach from LifeLock.

10.     Specifically, on August 14, 2024, Plaintiff received notice that her PII, including her SSN, was compromised in the Data Breach and found on the dark web. Plaintiff received this notice from LifeLock. Upon information and belief, beginning at the end of July, other Class

---

[4]     *See supra* n.1.

[5]     *Id.*

members received similar notices from their own credit and identity protection monitoring services that their PII was found on the dark web.

11.     Defendant has offered no assurance that the sensitive and private PII was accessed in the Data Breach has been recovered or destroyed.

12.     The exposure of a person's PII through a data breach substantially increases that person's risk of identity theft, fraud, and similar forms of criminal mischief, potentially for the rest of their lives. Mitigation of such risk requires individuals to expend a significant amount of time and money to closely monitor their credit, financial accounts, and email accounts. Mitigation of the risk of misuse of their sensitive and private information may not even be possible.

13.     Indeed, Defendant has expressly advised victims of the Data Breach to "take preventive measures to help prevent and detect any misuse of your information. As a first step, we recommend that you closely monitor your financial accounts and if you see any unauthorized activity, you should promptly contact your financial institution."[6]

14.     As a result of Defendant's inadequate security and breach of its duties and obligations, the Data Breach occurred, and Plaintiff's and Class members' PII was accessed, exfiltrated, and disclosed. Plaintiff and Class members are now at a substantially increased risk of experiencing misuse of their PII in the coming years. This action seeks to remedy these failings and their consequences.

15.     The injury to Plaintiff and Class members is compounded by the fact that Defendant has yet to fully address the Data Breach and notify the victims of its occurrence. Defendant's

---

[6]     Security Incident, NATIONAL PUBLIC DATA, https://nationalpublicdata.com/Breach.html (last visited Aug. 19, 2024).

failure to timely notify the victims of the Data Breach meant that Plaintiff and Class members were unable to take proactive measures to prevent or mitigate the resulting harm.

16.     Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose PII was stolen in the Data Breach. Plaintiff asserts claims for negligence, negligence *per se*, breach of fiduciary duty, unjust enrichment, and invasion of privacy, and seek declaratory relief, injunctive relief, monetary damages, punitive damages, equitable relief, and all other relief authorized by law.

## PARTIES

**Plaintiff**

17.     Plaintiff Diana Burroughs is a natural person and is a citizen of the State of Texas.

**Defendant**

18.     Defendant Jerico Pictures, Inc. is a Florida corporation with its principal place of business in Coral Springs, Florida.

19.     National Public Data is a trade name owned and controlled by Defendant Jericho Pictures, Inc., and is a public records data provider specializing in background checks and fraud prevention.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d) because the matter in controversy exceeds $5 million dollars, exclusive of interest and costs, and is a class action in which at least one Class member is a citizen of a state different from the citizenship of Defendant.

21.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District, regularly conducts business in this District, and the acts and omissions giving rise to Plaintiff's claims emanated from within this District.

22.     Venue is proper under 18 U.S.C. §1391(b) because Defendant maintains its principal place of business in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

***Defendant Collects and Stores Personally Identifiable Information***

23.     Defendant conducts business under the name National Public Data and is a public records data provider specializing in background checks and fraud prevention. Defendant advertises that its services are used by private investigators, background check websites, data resellers, mobile apps, applications, and more.[7]

24.     Defendant guarantees freshness and quality of data at low cost, and represents that its data hub is updated regularly.[8]

25.     Defendant utilizes XML and API gateway to instantly deliver data to consumers.[9]

26.     Upon information and belief, Defendant engages in the practice of assembling or evaluating sensitive information of individuals such as PII for the purpose of furnishing that information to its customers.

27.     Additionally, upon information and belief, Defendant obtains personal and sensitive information from individuals, including their SSNs to completely assemble its database of records, complete background checks, and to otherwise carry out its business.

28.     Defendant collects and maintains such information on its servers.

---

[7]     *See supra* n.3.

[8]     About Us, NATIONAL PUBLIC DATA, https://nationalpublicdata.com/about-us.html (last visited Aug. 19, 2024).

[9]     *See supra* n.3.

29.     For example, in or about January 2024, Defendant's website contained the following representations about the databases it hosts[10]:



30.     In or about January 2024, Defendant also advertised the availability of other databases such as criminal records, sex offender records, USA Consumer Data, cell phone/unlisted number search, marriage and divorce, email address search, SSDI Death Index, voter registration, people at work, physician background check, FAA Pilots and Planes, USA Business Profiles, Canadian Business Profiles, White and Yellow Pages, Merchant vessels, vehicle ownership,

---

[10]    Databases, NATIONAL PUBLIC DATA (Jan. 17, 2024), Internet Archive, https://web.archive.org/web/20240117042155/http://www.nationalpublicdata.com/databases.html (last visited August 18, 2024).

Canadian people finder, national Medicare sanctions, bankruptcy search, OFAC/SDN/terrorist search.[11]

31.     Defendant no longer advertises the specific databases that it hosts. Instead, Defendant encourages visitors to contact a representative for further information.[12]

32.     On information and belief, the type of information that Defendant maintains includes, *inter alia*: full names, addresses, dates of birth, SSNs, and any other information necessary to maintain its database and otherwise carry out its business.

33.     Due to the highly sensitive nature of the information Defendant collects and maintains, Defendant is obligated to provide confidentiality and adequate security for individuals information in compliance with statutory privacy requirements and industry standards.

34.     Upon information and belief, Defendant collected and maintained in its database Plaintiff's and Class members' PII, including their SSNs.

35.     Plaintiff and Class members received notice beginning in late July 2024, that their PII which was in Defendant's possession was stolen in the Data Breach. The notice came not from Defendant, but rather various credit and identity monitoring services.

36.     The notice Plaintiff received from LifeLock stated that her PII was found on the dark web. Plaintiff was subsequently advised by LifeLock that her PII had been compromised in the Data Breach.

37.     Plaintiff and Class members are entitled to protections to keep their sensitive PII, including their SSNs, confidential and secured, to use such information for business purposes only, and to make only authorized disclosures of this information.

---

[11]    *Id.*

[12]    Contact Us, NATIONAL PUBLIC DATA, https://nationalpublicdata.com/contacts.html (last visited Aug. 19, 2024).

***Defendant Knew that Criminals Target Valuable Personally Identifiable Information and Failed to Take Action to Prevent Theft***

38.     At all relevant times, Defendant knew it was storing sensitive PII and that, as a result, Defendant's systems would be attractive for cybercriminals.

39.     Defendant also knew that a breach of its systems, and exposure of the information stored therein, would result in the increased risk of identity theft and fraud against the individuals whose PII was compromised.

40.     The risks are not theoretical. The prevalence of data breaches has increased dramatically over the years: "The number of reported data breaches in the U.S. rose to a record 3,205 in 2023, up 78% from 2022 and 72% from the previous high-water mark in 2021, according to the nonprofit Identity Theft Resource Center."[13]

41.     In recent years, numerous high-profile breaches have occurred including breaches involving MoveIt, Fortra, and Equifax.

42.     In tandem with the increase in data breaches, the rate of identity theft has increased. Since 2019, identity theft reports have increased 68.3%. In the second quarter of 2023, roughly 277,620 ID theft reports were submitted to the Federal Trade Commission ("FTC"), which was a substantial increase from the 164,982 reported in the same quarter in 2019.

43.     Every state has experienced an increase in identity theft over 11% per 100,000 residents since 2019.

---

[13]   Identity Theft Resource Center, *Identity Theft Resource Center 2023 Annual Data Breach Report Reveals Record Number of Compromises; 72 Percent Increase Over Previous High* (Jan. 25, 2024), https://www.idtheftcenter.org/post/2023-annual-data-breach-report-reveals-record-number-of-compromises-72-percent-increase-over-previous-high/#:~:text=According%20to%20the%202023%20Annual,high%20in%202021%20(1%2C860 ).

44.     PII has considerable value to hackers. Hackers sell stolen data on the black market through the "proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."[14]

45.     The breadth of data that can be bought and sold leaves Defendant's consumers especially vulnerable to identity theft, tax fraud, and credit and bank fraud.

46.     Consumers also place a high value on the privacy of their data. Studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[15]

47.     Recently, more consumers are exercising their Data Subject Access Rights and leaving providers over their data practices and policies.

48.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has, thus, deprived that consumer of the full monetary value of the consumer's transaction with the company.

49.     Defendant certainly knew and understood that unprotected or exposed PII in its custody is highly valuable and sought after by nefarious criminals seeking to illegally monetize that PII through unauthorized access.

50.     Armed with this knowledge, Defendant breached its duties by failing to implement and maintain reasonable security measures to protect Plaintiff's and Class members' PII from being stolen.

---

[14]   Krebs on Security, *The Value of a Hacked Company* (July 14, 2016), https://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/.

[15]   Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior: An Experimental Study*, 22 INFO. SYS. RESEARCH 213 (Feb. 19, 2010).

*The Data Breach*

51.     On June 1, 2024, it was reported by VXUG that Defendant's database of 2.9 billion records containing individuals' personal information, including their SSNs, was posted online for sale for $3.5 million by the cybercriminal group known as "USDoD," who had improperly accessed the data on Defendant's network back in April 2024.[16]

52.     Indeed, the technology security company HackManac posted on its X Account on April 8, 2024, that cybercriminal group USDoD was threatening to sell a 4 TB database containing 2.9 billion records that it stole from National Public Data's network for $3.5 million.[17] HackManac included in its post a screenshot of USDoD's threat as posted on a dark web forum:



53.     The validity of the data was confirmed by VXUG.[18]

54.     Defendant has not issued individual notifications to affected individuals.

---

[16]     *See supra* n.1.

[17]     @H4ckManac, X (Apr. 8, 2024 4:05 AM), https://x.com/H4ckManac/status/1777246310782902686/photo/1.

[18]     *See supra* n.1.

55.     Instead, Defendant posted on its website a link to information about a "Security Incident," in which Defendant stated:

**General Information**

**What Happened?**

There appears to have been a data security incident that may have involved some of your personal information. The incident is believed to have involved a third-party bad actor that was trying to hack into data in late December 2023, with potential leaks of certain data in April 2024 and summer 2024. We conducted an investigation and subsequent information has come to light. What Information Was Involved? The information that was suspected of being breached contained name, email address, phone number, social security number, and mailing address(es).

**What We Are Doing**

We cooperated with law enforcement and governmental investigators and conducted a review of the potentially affected records and will try to notify you if there are further significant developments applicable to you. We have also implemented additional security measures in efforts to prevent the reoccurrence of such a breach and to protect our systems.

**What You Can Do**

We are notifying you so that you can take action which will assist to minimize or eliminate potential harm. We strongly advise you to take preventive measures to help prevent and detect any misuse of your information. As a first step, we recommend that you closely monitor your financial accounts and if you see any unauthorized activity, you should promptly contact your financial institution. As a second step, you may want to contact the three U.S. credit reporting agencies (Equifax, Experian, and TransUnion) to obtain a free credit report from each by calling 1.877.322.8228 or by logging onto www.annualcreditreport.com.

It is also recommended that you place a free fraud alert on your credit file. A fraud alert tells creditors to contact you before they open any new accounts or change your existing accounts. Contact any one of the three major credit bureaus. As soon as one credit bureau confirms your fraud alert, the others are notified to place fraud alerts. The initial fraud alert stays on your credit report for one year. You can renew it after one year.[19]

---

[19]   Security Incident, NATIONAL PUBLIC DATA, https://nationalpublicdata.com/Breach.html (last visited Aug. 19, 2024).

56. Despite Defendant providing no notice to the Data Breach victims beyond a website page, Plaintiff and Class members received notice from various credit monitoring and identity monitoring services beginning in late July 2024, that their PII including their SSNs was accessed in the Data Breach and thereafter found on the dark web.

57. Upon information and belief, the cyberattack was targeted at Defendant, due to its status as an entity that collects, creates, and maintains PII on its computer network and/or systems.

58. Plaintiff's and Class members' PII was compromised and acquired in the Data Breach.

59. Due to this targeted cyberattack, data thieves were able to gain access to and obtain data from Defendant that included the PII of Plaintiff and Class members.

60. As evidenced by the Data Breach's occurrence, the PII contained on Defendant's systems was not encrypted. Had it been, the data thieves would have stolen only unintelligible garble.

61. Plaintiff and Class members now live with their PII exposed in cyberspace and available to people willing to purchase and use the information for any number of improper purposes and crimes.

62. Plaintiff and Class members now face constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class members are incurring and will continue to incur such damages, in addition to any fraudulent use of their PII.

***Plaintiff's Experience in the Data Breach***

63. On August 14, 2024, Plaintiff received an email from LifeLock, an identity theft monitoring company, stating that her PII was found on the dark web.

64.     Concerned that the email may itself have been some type of cyber-scam, Plaintiff called LifeLock and Experian, a credit reporting company, who confirmed that her PII had been detected on the dark web and this was likely due to her PII being exfiltrated as a result of the Data Breach.

65.     As a result, Plaintiff has already spent, and anticipates having to spend, substantial time and resources monitoring her credit report and financial accounts for fraudulent activity.

66.     Plaintiff is careful about sharing her private information. Plaintiff stores any documents containing private information in a safe and secure location. She never knowingly transmitted unencrypted private information over the internet or any other unsecured medium.

67.     Plaintiff is now at a substantial risk of identity theft and will spend future time and resources to monitor her accounts and mitigate the risk of identity theft and/or other types of fraud.

***Defendant Failed to Comply with the FTC Act and FTC Guidelines***

68.     The FTC Act prohibits Defendant from engaging in "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. §45.

69.     The FTC has promulgated numerous guides for businesses which reflect the importance of implementing reasonable data security practices.

70.     The FTC's publication, Protecting Personal Information, established cyber-security guidelines for businesses. The guidelines provide that businesses should take action to protect the personal information that they collect; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their networks' vulnerabilities; and implement policies to correct any security problems.

71.     The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone

is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

72.     The FTC further recommends that businesses not maintain private information longer than is needed for authorization of a transaction; limit access to sensitive information; require complex passwords be used on networks; use industry-tested methods for security; monitor for suspicious activity on the networks; and verify that third-party service providers have implemented reasonable security measures.

73.     The FTC has the authority to bring enforcement actions against businesses for failing to protect PII adequately and reasonably under Section 5 of the FTC Act, 15 U.S.C. §45.

74.     The orders that result from enforcement actions further clarify the measures businesses must take to meet their data security obligations.

75.     Defendant failed to properly implement basic data security practices.

76.     Defendant was at all relevant times fully aware of its obligations to protect individuals' PII, and of the significant consequences that would result from its failure to do so.

77.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to individuals' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. §45.

78.     Consequently, cybercriminals circumvented Defendant's lax security measures, resulting in the Data Breach and causing injury to Plaintiff and Class members.

***Defendant Failed to Comply with Industry Standards***

79.     Entities like Defendant are particularly vulnerable to cyberattacks because of the sensitive nature of the information that they collect and maintain.

- 15 -

80.     Due to this vulnerability, there are industry best practices that should be implemented by entities like Defendant.

81.     These practices include but are not limited to: Educating and training employees about the risks of cyberattacks, strong passwords, multi-layer security such as firewalls, anti-virus and malware software, encryption, multi-factor authentication, backup data, limitation of employees with access to sensitive data, setting up network firewalls, switches and routers, monitoring and limiting the network ports, and monitoring and limited access to physical security systems.

82.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including, but not limited to, PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

83.     Defendant's failure to implement the industry standards described herein resulted in the Data Breach and caused injury to Plaintiff and Class members.

***Common Damages Sustained by Plaintiff and Class Members***

84.     For the reasons mentioned above, Plaintiff and all other Class members have suffered injury and damages directly attributable to Defendant's failure to implement and maintain adequate security measures, including, but not limited to: (i) fraudulent credit card applications attempted in their name (ii) a substantially increased risk of identity theft – risk justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) invasion of their

privacy; (v) deprivation of the value of their PII, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face.

## CLASS ALLEGATIONS

85.     Plaintiff brings this class action individually and on behalf of all persons similarly situated, pursuant to Rules 23(a) and (b)(1)-(3) of the Federal Rule of Civil Procedure.

86.     Plaintiff seeks certification of a Class as defined below and subject to further amendment:

### Nationwide Class

All individuals in the United States whose PII was compromised in the Data Breach (the "Class").

### Texas Subclass

All individuals residing in Texas whose PII was compromised in the Data Breach (the "Texas Subclass").[20]

87.     Excluded from the Class is Defendant and its affiliates, parents, subsidiaries, officers, agents, and directors, as well as the judge(s) presiding over this matter and their staff.

88.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

89.     ***Numerosity***. The members in the Class are so numerous that joinder of all Class members in a single proceeding would be impracticable. It was reported that approximately 2.9

---

[20]     The Nationwide Class and the Texas Subclass are collectively referred to herein as the "Class."

billion records was exposed in the Data Breach. The number of individuals and contact information of those individuals are available from Defendant's business records.

90.    ***Commonality***. Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

- whether Defendant had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class members' PII from unauthorized access and disclosure;

- whether Defendant failed to exercise reasonable care to secure and safeguard Plaintiff's and Class members' PII;

- whether Defendant breached its duties to protect Plaintiff's and Class members' PII;

- whether Defendant breached its fiduciary duty to Plaintiff and Class members;

- when Defendant learned of the Data Breach;

- whether Defendant knew or should have known that its data security systems and monitoring procedures were deficient;

- whether hackers obtained Plaintiff's and Class members data in the Data Breach;

- whether Defendant was unjustly enriched;

- whether Defendant invaded Plaintiff's and Class members' privacy by causing the Data Breach;

- whether Plaintiff and Class members are entitled to injunctive relief and identity theft protection to redress the imminent harm they face due to the Data Breach; and

- whether Plaintiff and Class members are entitled to damages and the measure of such damages and relief.

91.    ***Typicality***. Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had their PII compromised in the Data Breach. Plaintiff and Class members were injured by the same wrongful acts, practices, and omissions committed by

Defendant, as described herein. Plaintiff's claims, therefore, arise from the same practices or course of conduct that give rise to the claims of all Class members.

92.      ***Adequacy of Representation***. Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff is an adequate representative of the Class in that she has no interests adverse to, or in conflict with, the Class they seek to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

93.      ***Superiority***. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and all other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress from Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

94.      All members of the proposed Class are readily ascertainable. Defendant has access to the names, addresses, and/or email addresses of Class members affected by the Data Breach.

95.      Class certification is appropriate under Rule 23(b)(3). Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff on behalf of herself and all other Class members. As a result, common questions predominate over

potential individual issues with respect to members of the Class. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

96.     Class certification is also appropriate under Rule 23(b)(2) because Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief regarding the Class members as a whole.

97.     Class certification under Rule P. 23(c)(4) is also appropriate because this Court can designate specific claims or issues or class-wide treatment and may designate multiple subclasses.

## CLAIMS FOR RELIEF

**Claims Brought on behalf of Plaintiff and the Nationwide Class, or
alternatively, the Texas Subclass**

### COUNT I
### Negligence

98.     Plaintiff repeats the allegations contained in Paragraphs 1-97 as if fully set forth herein.

99.     Defendant collects PII of millions of individuals as part of its business, and sells that PII to its customers.

100.    Defendant collected, acquired, and stored Plaintiff's and Class members' PII on its servers.

101.    By collecting, acquiring, and storing Plaintiff's and Class members' PII, Defendant was entrusted to safeguard their information.

102.    Defendant had knowledge of the sensitivity of Plaintiff's and Class members' PII, and the consequences that would result from the unauthorized disclosure of such information. Defendant knew that entities such as it were the target of cyber-attacks in the past, and that Plaintiff

and Class members were the foreseeable and probable victims of any inadequate data security procedures.

103.    It was therefore reasonably foreseeable that the failure to implement adequate data security procedures would result in injuries to Plaintiff and Class members.

104.    Defendant owed a duty to Plaintiff and Class members to exercise reasonable care in safeguarding and protecting their PII in its possession, custody, or control from the unauthorized disclosure of such information.

105.    Defendant's duty to exercise reasonable care arises from several sources, including, but not limited to, common law, the FTC Act, and industry standards.

106.    Defendant breached its duty by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII entrusted to it – including Plaintiff's and Class members' PII.

107.    It has been reported that the PII of Plaintiff and Class members was disclosed to unauthorized third persons as a result of the Data Breach. Further, Plaintiff and Class members have received notice from credit and identity monitoring services that their PII was found on the dark web because of the Data Beach.

108.    Defendant's negligent conduct or breach of the above-described duties owed to Plaintiff and Class members caused their PII to be compromised in the Data Breach.

109.    Plaintiff and Class members were in no position to protect their PII themselves. Indeed, it is likely that not a single Class member, including Plaintiff, had ever heard of Defendant before the Data Breach.

110.    But for Defendant's breach of the duties described herein, Plaintiff and Class members' PII would not have been compromised.

111.    There is a causal relationship between Defendant's failure to implement, control, direct, oversee, manage, monitor, and audit adequate data security procedures to protect the PII of individuals and the harm suffered by Plaintiff and Class members.

112.    As a direct and proximate result of Defendant's conduct described above, it directly and proximately caused the Data Breach, and Plaintiff and all other Class members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft – risk justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) actual identity theft; (iii) improper disclosure of their PII; (iv) breach of the confidentiality of their PII; (v) deprivation of the value of their PII, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face.

113.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and Class members have suffered and will continue to suffer other forms of injury, including, but not limited to, anxiety, emotional distress, invasion of privacy, and other economic and non-economic losses.

114.    Plaintiff and Class members are entitled to damages, including nominal damages, incurred as a result of the Data Breach.

115.    Defendant's negligent conduct is ongoing, in that it still holds Plaintiff's and Class members PII in an unsafe and insecure manner.

116.     Plaintiff and Class members are also entitled to injunctive relief in the form of requiring Defendant to provide credit monitoring to Class members.

## COUNT II
### Negligence Per Se

117.     Plaintiff repeats the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

118.     Defendant collected, stored, and maintained Plaintiff's and Class members' PII as part of their regular businesses, which affect commerce.

119.     Section 5 of the FTC Act, and applicable state consumer protection statutes, are independent sources of Defendant's duty to use reasonable data security measures to protect Plaintiff's and Class members' PII.

120.     The relevant requirements imposed by Section 5 of the FTC Act and state statutory law inform Defendant's duty of care.

121.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to employ reasonable measures to protect and secure sensitive consumer data. The FTC publications and orders described herein also form part of the basis of Defendant's duty in this regard.

122.     Defendant violated Section 5 of the FTC Act by failing to use reasonable data security measures to protect and safeguard Plaintiff's and Class members' PII.

123.     Defendant's violations of Section 5 of the FTC Act constitute negligence *per se*.

124.     Plaintiff and Class members are within the class of persons that Section 5 of the FTC Act and state consumer protection statutes were intended to protect.

125.    The FTC has long recognized that Section 5 of the FTC Act applies to "unfair" or "deceptive" acts that "cause[] substantial injury to consumers[,]" and numerous courts have held that Section 5 of the FTC Act was designed to protect consumers whose data was compromised by the negligent acts of a defendant. 29 Fed. Reg. 8324, 8355 (July 2, 1964).

126.    The harm Plaintiff and Class members suffered as a result of Defendant's failure to implement and maintain adequate data security is the type of harm that Section 5 of the FTC Act was intended to guard against.

127.    The FTC has pursued enforcement actions against businesses, like Defendant, which, as a result of their failure to employ reasonable data security measures, caused the same types of harm suffered by Plaintiff and Class members as a result of the Data Breach.

128.    Defendant breached its duty to secure and safeguard Plaintiff's and Class members' PII by violating statutory laws and regulations requiring it to implement and maintain adequate data security to safeguard individuals' PII.

129.    Defendant's duty to use reasonable care in protecting Plaintiff's and Class members' PII arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect and secure PII in its possession and control.

130.    It was reasonably foreseeable to Defendant that its failure to implement and maintain adequate data security practices to safeguard and protect Plaintiff's and Class members' PII would result in the improper access and disclosure of that sensitive information to unauthorized third parties.

131.    Defendant's conduct was particularly unreasonable given the nature and amount of PII it collects, stores, and maintains, and the foreseeable consequences of a data breach, including

the substantial damages that would result to Plaintiff and Class members in the event of a data breach.

133.    The injury and harm Plaintiff and Class members suffered following the Data Breach were the direct and proximate result of Defendant's violations of Section 5 of the FTC Act.

133.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have suffered and will suffer injuries, including, but not limited to: (a) actual fraud and identity theft; (b) the loss of the opportunity to control how their PII is used; (c) the compromise, publication, or theft of their PII; (d) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, fraud, or unauthorized use of their PII; (e) loss of productivity and lost opportunity costs associated with addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from fraud and identity theft; (f) costs associated with placing freezes on credit reports; (g) the continued risk and substantially increased risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class members' PII; (h) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class members; (i) the diminution in value of Plaintiff's and Class members' PII; and (j) overpayment for the services that were received without adequate data security.

134.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have suffered and will continue to suffer other forms of injury and/or harm,

including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

135.    Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have suffered and will suffer the continued risk of exposure of their PII, which upon information and belief remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its possession.

136.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members are entitled to recover actual, consequential, and nominal damages.

**COUNT III**
**Breach of Fiduciary Duty**

137.    Plaintiff repeats the allegations contained in Paragraphs 1-97 as if fully set forth herein.

138.    Defendant collected, stored, and maintained Plaintiff's and Class members' PII and, as such, accepted a fiduciary responsibility to hold that PII in confidence and protect it from unauthorized disclosure. Defendant's acceptance and storage of Plaintiff's and Class members' PII created a fiduciary relationship between Defendant and Plaintiff and Class members. In light of this relationship, Defendant must act primarily for the benefit of Plaintiff and Class members, which includes safeguarding and protecting Plaintiff's and Class members' PII.

139.    Defendant breached its fiduciary duty by failing to properly protect the integrity of the system containing Plaintiff's and Class members' PII, failing to comply with Section 5 of the FTC Act and industry standards, and otherwise failing to safeguard Plaintiff's and Class members' PII that it collected.

140.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff's and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased risk of identity theft – risk justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) actual identity theft; (iii) improper disclosure of their PII; (iv) breach of the confidentiality of their PII; (v) deprivation of the value of their PII, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face.

**COUNT IV**
**Unjust Enrichment**

141.    Plaintiff repeats the allegations contained in Paragraphs 1-97 as if fully set forth herein.

142.    Plaintiff and Class members have an interest, both equitable and legal, in the private information about them that was collected, secured, and maintained by Defendant and that was ultimately compromised in the Data Breach.

143.    Defendant received a financial benefit when it sold Plaintiff's and Class members' PII to its customers for profit. Defendant's business model would not exist save for the need to ensure the security of Plaintiff's and Class members' PII.

144.    Upon information and belief, this financial benefit was, in part, conferred when portions of Plaintiff's and Class members' information were used by Defendant to obtain payments from its customers for access to Defendant's database containing Plaintiff's and Class members' PII, including their SSNs.

145.    Defendant accepted or had knowledge of the benefits conferred upon it by its customers who paid for Plaintiff's and Class members' PII. Defendant appreciated and benefitted

from the receipt of Plaintiff's and Class members' PII in that they used the PII and profited from the transactions in furtherance of its business.

146.    Defendant also understood and appreciated that the PII pertaining to Plaintiff and Class members was private and confidential and its value depended upon Defendant maintaining the privacy and confidentiality of that PII.

147.    Defendant acquired Plaintiff's and Class members' PII through inequitable means in that it failed to employ adequate data security procedures previously alleged herein.

148.    As a result of Defendant's conduct, Defendant has been unjustly enriched in an amount equal to Defendant's profits from the sale of Plaintiff's and Class members' PII.

149.    Defendant should not be permitted to retain the payments which include information belonging to Plaintiff and Class members because Defendant failed to adequately implement the data privacy and security procedures for itself that it profited from.

150.    Defendant unjustly enriched itself by using payments containing PII provided by Plaintiff and Class members to further its business.

151.    Notably, Defendant chose not to use its profits from the sale of Plaintiff's and Class members' PII to enhance its data security procedures. As such, any profits Defendant earned that would otherwise have been used to pay for improved and adequate data security should be disgorged.

152.    Under principles of equity and good conscience, Defendant should not be permitted to retain the payments wrongfully earned, and be compelled to provide for the benefit of Plaintiff and Class members, all unlawful proceeds received by it as a result of the conduct and Data Breach alleged herein.

## COUNT V
## Invasion of Privacy/Intrusion upon Seclusion

153.    Plaintiff repeats the allegations contained in Paragraphs 1-97 as if fully set forth herein.

154.    Plaintiff and Class members have a legitimate expectation of privacy in their PII, and they are entitled to the protection of that information against improper access and disclosure to unauthorized third parties.

155.    As alleged, Defendant owes a duty to Plaintiff and Class members to keep their PII secure and confidential.

156.    Defendant failed, however, to implement and maintain adequate data security practices to secure and protect Plaintiff's and Class members' PII from unauthorized access and disclosure.

157.    By failing to adequately protect Plaintiff's and Class members' PII, Defendant allowed unauthorized and unknown third parties to access and obtain Plaintiff's and Class members' private and confidential data.

158.    The unauthorized access and disclosure of Plaintiff's and Class members' PII is highly offensive to a reasonable person.

159.    Defendant invaded Plaintiff's and Class members' right to privacy and intruded into Plaintiff's and Class members' private affairs by intentionally misusing or disclosing their PII without their informed, voluntary, affirmative, and clear consent.

160.    Plaintiff and Class members reasonably expected that the PII in Defendant's possession would be kept private and would not be disclosed without their authorization.

161.    Defendant's inadequate data security practices, polices, and procedures, and the resulting Data Breach, constitute intentional interference with Plaintiff's and Class members'

interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

162.    Defendant acted with a knowing state of mind when they permitted the Data Breach to occur because it knew or should have known that their data security practices were inadequate.

163.    Plaintiff and Class members were the foreseeable and probable victims of Defendant's failure to implement and maintain adequate data security practices and procedures.

164.    By intentionally failing to keep Plaintiff's and Class members' PII safe, and by intentionally misusing and/or disclosing said information to unauthorized parties, Defendant intentionally invaded Plaintiff's and Class members' privacy by:

(a)    intentionally and substantially intruding into Plaintiff's and Class members' private affairs in a manner that identifies Plaintiff and Class members and that would be highly offensive and objectionable to an ordinary person;

(b)    intentionally publicizing private facts about Plaintiff and Class members, which is highly offensive and objectionable to an ordinary person; and

(c)    intentionally causing anguish or suffering to Plaintiff and Class members.

165.    Defendant knew or reasonably should have known that an ordinary person in Plaintiff's or Class members' position would consider Defendant's intentional actions highly offensive and objectionable.

166.    As a direct and proximate result of the above acts and omissions, Plaintiff's and Class members' PII was disclosed to third parties without their authorization, causing Plaintiff and Class members to suffer damages.

167.     Defendant's unlawful invasions of privacy damaged Plaintiff and Class members, as alleged herein. Among other things, Plaintiff and Class members suffered mental distress, and their reasonable expectations of privacy were frustrated and defeated.

168.     Accordingly, Plaintiff and Class members are entitled to damages in an amount to be determined at trial and/or injunctive relief.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all other members of the Class, respectfully request that the Court enter judgment in her favor and against Defendant as follows:

A.     Certifying the Class as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's counsel as Class Counsel;

B.     Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, nominal damages, restitution, and disgorgement;

C.     Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of herself and the Class, seeks appropriate injunctive relief designed to prevent Defendant from experiencing another data breach by adopting and implementing best data security practices to safeguard PII and to provide or extend credit monitoring services and similar services to protect against all types of identity theft;

D.     Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E.     Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F.     Awarding Plaintiff and the Class such other favorable relief as allowable under law.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

DATED: August 19, 2024           ROBBINS GELLER RUDMAN
                                    & DOWD LLP
                                STUART A. DAVIDSON
                                Florida Bar No. 84824
                                LINDSEY H. TAYLOR
                                Florida Bar No. 1027908
                                ALEXANDER C. COHEN
                                Florida Bar No. 1002715

                                 */s/ Stuart A. Davidson*
                                 STUART A. DAVIDSON

                                225 NE Mizner Boulevard, Suite 720
                                Boca Raton, FL  33432
                                Telephone:  (561) 750-3000
                                (561) 750-3364 (fax)
                                sdavidson@rgrdlaw.com
                                ltaylor@rgrdlaw.com
                                acohen@rgrdlaw.com

                                *Attorneys for Plaintiff and the Class*